KNEPPER ET AL., APPELLANTS, *v.* TRAVELERS INSURANCE COMPANY, APPELLEE. ▮

(No. L-76-248—Decided February 25, 1977.)

*Mr. Allan J. Chabler*, for appellants.
*Mr. Allan J. Brogan*, for appellee.

BROWN, J. Plaintiffs-appellants, Daniel and Linda Knepper, appeal from a judgment of the Toledo Municipal Court in favor of defendant-appellee, Travelers Insurance Company, denying reimbursement to plaintiffs for psychologist services rendered plaintiffs under a group insurance contract issued by defendant to the Railway Labor Organization National Group Insurance Plan.

Defendant executed and issued its group insurance contract with the railway organization in the District of Columbia. The group insurance plan was for the benefit of the organization's railway employees and their eligible dependents. Plaintiff Daniel Knepper was such a railway employee. The group policy contract was issued "as amended, principally affecting the employees, effective March 1, 1972," as provided under the group policy contract GA23000.

Plaintiffs had nervous disorders and incurred expenses of $1,728.75 for services rendered plaintiffs by a qualified licensed psychologist relevant to the nervous disorder.

The plaintiffs presented their claim to defendant for payment, claiming coverage and the right to benefits under the group insurance contract. Plaintiffs, on their claimed right to benefits, relied upon the following provisions of the insurance contract:

"Major Medical Insurance provides the extra protection you need to help meet the large expenses incurred when long periods of disability result from a serious sickness or a severe injury.

" * * * [A]nd it extends the Group Insurance Plan to include reimbursement for practically all types of necessary medical expenses, whether treatment is furnished in or out of the Hospital. It even includes reimbursement for such expenses as special nursing care, medical appliances, and prescription drugs and medicines.

"Payment will be made of 80% (65% for a mental or

nervous disorder while not confined as an in-patient in a Hospital) of the charges to a maximum of $50,000 *for covered medical expenses* which in any Calendar Year * * *." (Emphasis ours.)

"The applicable percentage is Eighty, except that with respect to expenses incurred on account of a mental or nervous disorder, as defined herein, while the Employee or his Dependent is not confined as an in-patient in a Hospital, the applicable percentage is Sixty-five. The term 'mental or nervous disorder' means a neurosis, psychoneurosis, psychopathy, psychosis, or other mental disease.

" ' Covered expenses' mean only such of the following expenses as are reasonable and are incurred by the Employee on account of himself while he is an Eligible Employee, or on account of an Eligible Dependent, for therapeutic treatment of bodily injury or sickness: * * *

"2. Charges made by a licensed physician or trained nurse (other than a nurse who ordinarily resides in the Employee's home or who is a member of the immediate family—comprising the Employee, * * *)."

The insurance contract also provided as follows:

"The Policyholder of Group Policy Contract No. GA-23000 is composed of the Employers represented by the National Carriers' Conference Committee and of the Organizations which are signatory to the Policy Contract as amended March 1, 1972. * * * "

R. C. 3923.231, effective January 1, 1974, provides as follows:

"Notwithstanding any provision of any policy of insurance issued or renewed after December 31, 1973, whenever such policy provides for reimbursement for any service that may be legally performed by a person licensed in this state as a psychologist as defined in division (A) of section 4732.01 of the Revised Code, reimbursement under such policy shall not be denied when such service is rendered by a person so licensed who has received a doctorate of psychology or has a minimum of five years clinical experience."

The trial judge granted judgment in favor of defend-

12

ant, denying insurance coverage for plaintiffs' claim for the following reasons stated in his judgment entry:

"Ohio Revised Code 3923.231 dealing with reimbursement of phychologists [sic] does not generally apply to insurance policies.

"It reads in part, 'Whenever such policies provides for reimbursement for any services that may be legally performed in this state by a phychologist * * * Reimbursement under such policies shall not be denied * * *.' [sic]

"An examination of the joint exhibit fails to show any reference of any provision for any reimbursement for phychological [sic] treatment. The insurance policy does not come within the purview of the statute."

Defendant rejected plaintiffs' claim for reimbursement for expenses for the psychologist's services, and contends there is no obligation to pay plaintiffs for such claim, for the following reasons:

1. Since the group insurance contract was written and issued in the District of Columbia, and is not a contract executed or renewed in the state of Ohio, R. C. 3923.-231 does not apply. Defendant argues that this statute applies only to insurance policies issued or renewed in Ohio, and does not apply to policies issued or renewed outside Ohio;

2. Even if R. C. 3923.231 does apply to insurance contracts issued or renewed in the District of Columbia, there is no coverage for plaintiffs under the present Travelers policy because it was issued effective March 1, 1972, and has not been issued or renewed subsequent to that date. Defendant argues that R. C. 3923.231, by the language "notwithstanding any provision of any policy of insurance issued or renewed after December 31, 1973," does not apply to Travelers policy which defendant contends was last issued or last renewed long before December 31, 1973— namely, last renewed on March 1, 1972.

We disagree with both of defendant's contentions. We reverse.

We find, and the defendant does not disagree, that the parties stipulated that the psychologist serving plain-

tiffs fell within the qualifications of the language of R. C. 3923.231, that this statute authorizes reimbursement for expenses for services of a qualified psychologist, and that coverage for such qualified psychologist's services is within the provisions of the language of the group insurance policy as excerpted, verbatim, above.

R. C. 3923.231 applies and becomes part of the Travelers group insurance contract GA 23000 as fully as if such statute were written into such contract, even though the contract was issued and renewed outside Ohio—namely, in the District of Columbia. Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which they are pertinent and applicable as fully as if such provisions were written into them. *Home Indemnity Co.* v. *Plymouth* (1945), 146 Ohio St. 96; 30 Ohio Jurisprudence 2d 244, Insurance, Section 233. This legal principle, and the conclusion we reach based thereon, harmonizes with another legal principle that any doubts or ambiguities concerning provisions of insurance contracts should be interpreted liberally in favor of the insured. *Security Finance Co.* v. *Aetna Ins. Co.* (1971), 26 Ohio St. 2d 135; cf., *Verducci* v. *Casualty Company* (1917), 96 Ohio St. 260. Therefore, the first contention of the defendant is without merit.

R. C. 3923.231 is applicable only to policies issued or renewed after December 31, 1973. Policy contract GA 23000 was issued prior to December 31, 1973. Therefore, the question is whether it has been renewed since that date. The right to renew a policy and the means and method of effecting such renewal are determined by the provisions of the policy. *Gwinn* v. *John Hancock Mut. Life Ins. Co.* (1944), 142 Ohio St. 510; 30 Ohio Jurisprudence 2d 270, Insurance, Section 268.

We do not have the actual policy contract (GA 23000) before us. However, the record contains a booklet summarizing the provisions of the contract, as amended effective March 1, 1972, and the testimony of defendant's witness, Ervin Wisniewski, Traveler's local supervisor of railroad group insurance. Wisniewski testified that the in-

14

surance *program* had not been renewed since December 31, 1973. The date of amendment in the booklet supports this testimony. However, on cross-examination he testified that the *policy* was continuous and would only be cancelled if there were a failure to pay a premium, and that the effect would be the same as an annual renewal. Since the policy coverage continued in force after December 31, 1973, by a renewal of the policy annually in March of each year following the policy's amendment in March 1972, we find appellee's second contention is without merit. We find that R. C. 3923.231 does apply to policy contract GA 23000 because the policy was renewed after December 31, 1973. Where insurance premiums are annually made, a renewal of insurance is made by the payment of a new annual premium. 30 Ohio Jurisprudence 2d 270, 273, 847, Insurance, Sections 268, 270, 925; 43 American Jurisprudence 2d 427, 429, Insurance, Sections 379, 381.

Finding that R. C. 3923.231 applies to and becomes part of Traveler's group insurance policy contract GA 23000 and that plaintiffs are entitled to coverage under that policy, we reverse the judgment of the Toledo Municipal Court and enter a final judgment in favor of plaintiff.

*Judgment reversed.*

Potter, P. J., and Connors, J., concur.